UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS MOORE,

        Plaintiff,           Case No. 1:07-cv-561

v.           Honorable Robert Holmes Bell

STATE OF MICHIGAN et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed on the grounds of immunity and failure to state a claim.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff is currently incarcerated in Marquette Branch Prison, but the events giving rise to his complaint occurred at Ionia Maximum Correctional Facility (ICF). Plaintiff sues the State of Michigan and the Michigan Department of Corrections (MDOC). Plaintiff also sues the following ICF employees: Warden Willie Smith, Administrative Assistant Roger Groves, Inspectors (Unknown) Haney and Betty Goodson, Assistant Deputy Warden Erica Huss, Classification Director and FOIA Coordinator Karl Foy; Doctors R. MiGliorio and Gerald McDonnell, Registered Nurses (RN) J. LeBane and S. Hogan and the unknown yard officer, unknown gun tower officer and the officers who responded to the incident giving rise to Plaintiff's complaint. Plaintiff sues the following MDOC employees: Director of the MDOC Patricia Caruso,[1] Unknown Party (Regional Prison Administrator for Ionia County), Deputy Director Christopher Crysler, and Unknown Party (Deputy Director in charge of Incidents, Administration and Programs). Plaintiff also sues MDOC Corrections Medical Services ("CMS"), Unknown Party (Primary Insurance Provider) and J. Armstrong.

    Plaintiff's complaint arises from a 2005 incident in the yard of ICF. Plaintiff alleges that he was assaulted by another prisoner and received a "bleeding laceration of [the] right [side of his] neck." (Compl. at 7, docket #1.)[2] Plaintiff alleges that certain unknown officers who were supervising the yard failed to protect him from this assault. (*Id.*) Plaintiff further asserts that it "is

---

[1]Plaintiff sues "Unknown Party Director of the MDOC." (Compl. at 2.) The only Director of the MDOC is Patricia Caruso. Therefore, the Court will address "Unknown Party Director of the MDOC" as Patricia Caruso, Director of the MDOC.

[2]The Court will use the page numbers assigned by the CM/ECF system for ease and clarity since Plaintiff attached several unnumbered pages to his complaint.

the responsibility of the Warden and Inspector's [sic] to ensure that all personnel receive the proper training" to address such an assault. (*Id.*) Plaintiff asserts that Defendant Huss was responsible for moving Plaintiff into the cell he was "in at the time of the incident." (*Id.*) Plaintiff asserts that he submitted a FOIA request to obtain the report of the incident and that his request was denied by Defendant Foy. (*Id.*)

Plaintiff's second claim concerns the medical care he received after sustaining the laceration to his neck. Plaintiff asserts that he did not receive the appropriate medical care and follow-up care. (*Id.* at 8.) Plaintiff also asserts he that received one pillow when his injury required that he have two pillows to elevate his head. (*Id.*)

In Plaintiff's third claim, he makes broad allegations that all Defendants were deliberately indifferent to his situation and violated five policy directives. (*Id.* at 10.)

Plaintiff requests $250,000.00 in damages from each Defendant, $250,000.00 in punitive damages from each Defendant and for Defendants to "pay all medical expenses when plaintiff is released from prison for 'medication, surgery, therapy, and travel expenses.'" (*Id*. at 4.)

II.   Immunity

Plaintiff may not maintain a § 1983 action against the State of Michigan or the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*,

440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (as itself and acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, I recommend dismissal of the State of Michigan and the Michigan Department of Corrections.

       III.    <u>Failure to state a claim</u>

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Respondeat Superior

A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Department of Soc. Services*, 436 U.S. 658 (1978)). As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998)).

Plaintiff's allegations do not state a cognizable § 1983 claim against Defendants Warden Smith and Inspectors Haney and Goodson. Regarding Defendants Warden Smith and Inspectors Haney and Goodson, Plaintiff alleges that: "It is the responsibility of the Warden and the Inspector's [sic] to ensure that all personnel receive the proper training as how to deal with critical's [sic] and how to limit, as well as control and respond." (Compl. at 7.) Plaintiff further alleges against those Defendants and Unknown Party named as "the Regional Prison Administrator for Ionia County," Unknown Party named as "Deputy Director in charge of 'Incidents, Administration and

Programs'" that "[i]t is standard policy per 'P.D.01.05.120' that the Warden, Regional Prison Administrator, Inspector's [sic], Deputy Director enforce, and ensure the proper training of staff to respond to critical incidents for the safety of staff and prisoners." (*Id.*) Plaintiff's complaint does not assert that Defendants Smith, Haney, Goodson, Unknown Party named as "the Regional Prison Administrator for Ionia County," or Unknown Party named as "Deputy Director in charge of 'Incidents, Administration and Programs'" encouraged, implicitly authorized or knowingly acquiesced in the alleged unconstitutional behavior of a subordinate. Plaintiff's allegations are based on "a mere failure to act" and do not state a claim. Therefore, I recommend dismissal of Defendants Haney, Goodson, Unknown Party named as "the Regional Prison Administrator for Ionia County" and Unknown Party named as "Deputy Director in charge of 'Incidents, Administration and Programs,'" and those allegations against Defendant Smith.[3]

### B.     Failure to Protect

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Mich. Dep't of Corr.*

---

[3]Plaintiff asserts another claim against Defendant Smith, which is addressed in section F.

69 F.3d 76, 79 (6th Cir.1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles,* 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

Plaintiff sues an Unknown Party named as the "yard officer" at the time of the incident, an Unknown Party named as the "guntower officer" at the time of the incident and Unknown Parties named as "all officers, Sergeants, Lieutenants" who responded to the June 25, 2005, incident. Plaintiff alleges that the yard officer "never moved from the doorway while plaintiff tried to avoid the situation" and the gun tower officer "never fired a warning shot." (Compl. at 7.) Plaintiff asserts that "the altercation never ceased until minutes later; only after someone assigned to the control center video noticed the altercation on the video screen and radioed the response of an altercation." (*Id.*) Plaintiff asserts that the officers responded once the incident was reported by the officer monitoring the video surveillance. Plaintiff's allegations are insufficient to state that these Defendants had objective knowledge of the altercation and deliberately ignored the situation. Furthermore, even assuming the gun tower officer noticed the altercation, the allegation that he had a federal constitutional duty to fire a warning shot is utterly frivolous. The firing of a warning shot amounts to the use of deadly force. The Constitution has never been held to *require* an officer to use deadly force to quell a prison disturbance, especially where, as here, the victim of the altercation is not threatened with serious or fatal injury. Therefore, Plaintiff has failed to state a claim against Defendants Unknown Party named as the "yard officer" at the time of the incident, Unknown Party named as the "guntower officer" at the time of the incident and Unknown Parties named as "all officers, Sergeants, Lieutenants" who responded to the June 25, 2005 incident.

### C. Medical Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27,

2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Plaintiff alleges that Defendant MiGliorio "faxed a 'CMS Authorization' for follow up treatment in person, within one (1) week" on June 27, 2005. (Compl. at 8.) Plaintiff alleges that Defendant Lebane stated that he was "completely healed," but as "nurse Kemp's Supervisory [sic] nurse" knew that Kemp had requested follow-up treatment on June 25, 2005. (Compl. at 8.) Plaintiff further alleges that Defendant Lebane did not consult with "the institutional physician, [Defendant] Dr. R. MiGliorino [sic] about extending the two (2) pillow detail, or any other [sic] follow up treatment." (*Id.*)    Plaintiff alleges that Defendant Crysler transferred Plaintiff to Standish Maximum Correctional Facility (SMF) on November 18, 2005, knew of Defendant MiGliorio's request for follow-up care and did not provide instructions for that care to be provided after the transfer. (Compl. at 8-9.) Plaintiff alleges that Defendant CMS also knew of Defendant MiGliorio's request for follow-up care, but did not provide for that care when he was transferred to SMF. (*Id.* at 9.)

Plaintiff fails to allege, however, any harm which occurred as a result of Defendants' alleged failure to ensure particular follow-up care was provided. Plaintiff does not allege that he was in pain or sustained any additional harm. Therefore, Plaintiff fails to state a claim which could satisfy the objective component for an Eighth Amendment claim. I recommend dismissal of Plaintiff's medical claim and Defendants MiGliorio, LeBane, Crysler and CMS.

### D.     Defendant Foy

Plaintiff asserts that he submitted a FOIA request to obtain the report of the incident and that his request was denied by Defendant Foy. (Compl. at 7.) To state a federal claim, Plaintiff must allege that he was deprived of a right secured by the federal Constitution or laws protected under § 1983. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff has failed to specify any right allegedly infringed by the denial of his FOIA request, which arises solely under state law. Plaintiff states only that his FOIA request was denied. *See Beedle v. Damasi*, No. 05-70430, 2006 WL 2457619, *1 (E.D. Mich. Aug. 22, 2006) (merely alleging that plaintiff's Michigan FOIA request was denied and that plaintiff was seeking redress for the denial under § 1983 fails to state a claim). Therefore, this Court recommends that Defendant Foy be dismissed for failure to state a claim.

### E.     Defendant Huss

Plaintiff's sole assertion against Defendant Huss is that she was responsible for moving Plaintiff into the cell he was "in at the time of the incident." (Compl. at 7.) The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim*, 461 U.S. at 245; *see also Moody*, 429 U.S. at 88 n.9. The Sixth Circuit has followed the

Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to be incarcerated in a particular cell, he fails to state a claim against Defendant Huss.

### F. Conclusory Allegations

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F .3d 716, 726 (6th Cir.1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (conclusory unsupported statements are insufficient to state a claim).

Plaintiff's remaining allegation against Defendant Smith and sole allegation against Defendant Groves is that Plaintiff "submitted a request for a copy of the 'Critical Incident Report.'" (Compl. at 7.) Plaintiff further alleges that Defendant Foy denied that request, but makes no further allegations against Defendant Smith and Groves. (*Id.*) Therefore, I recommend dismissal Defendants Smith and Groves for failure to state a claim.

### G.     Absence of Allegations of Specific Conduct

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995) (where complaint failed to allege wrongdoing by a particular defendant, it fell "far short of the standard that is necessary to weed out meritless actions"). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich 1991). It is not the obligation of the Court to dissect Plaintiff's complaint to divine who Plaintiff believes committed certain actions. Rather, it is Plaintiff who is in the best position to plead these facts, if these facts do exist. *Veney*, 70 F.3d at 922.

Plaintiff lists Defendants Hogan, McDonnell, Armstrong, Caruso and Unknown Party named as "Primary Insurance Provider" as Defendants in his complaint, but makes no specific allegations against them. Therefore, I recommend dismissal of Defendants Hogan, McDonnell, Armstrong, Caruso and Unknown Party named as Primary Insurance Provider for failure to state a claim.

### H.     Alleged Violations of Policy Directives

Defendants' alleged failure to comply with the administrative rules does not itself rise to the level of a constitutional violation. *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to

follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).

### **Recommended Disposition**

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed on the grounds of immunity and failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

Dated: August 13, 2007            /s/ Joseph G. Scoville
                                  United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).